**Alexander STAVRIDES et al.,
Appellants,**

v.

**MELLON NATIONAL BANK & TRUST
COMPANY et al.**

No. 73–1519.

United States Court of Appeals,
Third Circuit.

Argued Nov. 6, 1973.

Decided Nov. 26, 1973.

Daniel M. Berger and Michael P. Malakoff, Berger & Kapetan, James H. Joseph, Herbert G. Sheinberg and Stewart B. Barmen, Sheinberg, Raphael & Barmen, Pittsburgh, Pa., for appellants.

Alexander Black and James Russell Sweeny, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for Union National Bank.

J. Tomlinson Fort and James J. Restivo, Jr., Reed, Smith, Shaw & McClay,

Pittsburgh, Pa., for Mellon National Bank & Trust Co.

David B. Fawcett, Jr. and Daniel P. Stefko, Dickie, McCamey & Chilcote, G. Harold Blaxter, Blaxter, O'Neill, Houston & Nash, Pittsburgh, Pa., for Dollar Savings Bank.

Harold H. Goldman, Goldman & Unatin, Pittsburgh, Pa., for Franklin Federal Savings & Loan Association of .Pittsburgh.

David S. Watson, Thorp, Reed & Armstrong, Pittsburgh, Pa., Judah I. Labovitz, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Federal National Mortgage Assn.

E. D. Hollinshead, Jr., Hollinshead & Mendelson, Charles F. Hodel, Jr., Smith, Hodel & Means, Pittsburgh, Pa., for First State Savings & Loan Assn.

Alexander C. Sherrard and William M. Hoffman, Campbell, Thomas & Burke, Pittsburgh, Pa., for Pittsburgh National Bank.

Judd N. Poffinberger, Jr. and W. Walter Braham, Jr., Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Century Federal Savings & Loan Association of Pittsburgh, Fidelity Savings and Loan Association, and West Penn Federal Savings and Loan Association.

Edward L. Flaherty, Jr., Meyer & Flaherty, Pittsburgh, Pa., for Century Federal Savings & Loan Association of Pittsburgh.

Robert E. McMonigle, McMonigle & Vesely, Pittsburgh, Pa., for Fidelity Savings and Loan Assn.

Frank R. Bolte and Donald S. Hershman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for Chartiers Valley Savings and Loan Association, Community Savings Association, Concord-Liberty Savings & Loan Association, Eureka Federal Savings and Loan Association, Fort Pitt Federal Savings and Loan Association, Friendship Federal Savings and Loan Association, Guaranty Savings and Loan Association, Home Federal Savings and Loan Association of Pittsburgh, Mt. Lebanon Federal Savings and Loan Association, Parkvale Savings Association, Regent Savings Association, Second Federal Savings and Loan Association of Pittsburgh, South Pittsburgh Savings and Loan Association, Stanton Federal Savings and Loan Association, Suburban Savings Association, Western Pennsylvania National Bank, Pittsburgh Home Savings and Loan Association, and First Federal Savings and Loan Association of Homestead.

Clarence B. Nixon, Jr., Nixon & Nixon, Pittsburgh, Pa., for Chartiers Valley Savings and Loan Association and Fort Pitt Federal Savings and Loan Association.

William H. Markus, Pittsburgh, Pa., for Concord-Liberty Savings and Loan Association and Home Federal Savings and Loan Association of Pittsburgh.

Harry E. Leas, Gault, O'Donnell & Leas, Pittsburgh, Pa., for Eureka Federal Savings and Loan Association.

John A. Virostek, Pittsburgh, Pa., for First Federal Savings & Loan Association of Homestead.

C. John Tillman, Hirsch, Weise & Tillman, Pittsburgh, Pa., for Friendship Federal Savings and Loan Association.

Carmen R. Capone, Evashwick, Brieger & Capone, Pittsburgh, Pa., for Guaranty Savings and Loan Association.

C. Bryson Schreiner, Pittsburgh, Pa., for Mt. Lebanon Federal Savings and Loan Association.

John R. McCaw, Alter, Wright & Barron, Pittsburgh, Pa., for Suburban Savings Association.

Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

The issue presented by this appeal from a January 4, 1973, district court order, 353 F.Supp. 1072, entering judgment dismissing Counts Fourth through Ninth of the First Amended Substituted Complaint, is the validity of that portion of such order holding that the Fifth

Count failed to state a claim upon which relief can be granted.[1]

Paragraph 37 of such complaint states the claim of the Fifth Count under the Truth-In-Lending Act, 15 U.S.C. § 1639, as follows:

"In the one year preceding the commencement of this action, the representative and class defendants have extended new credit to the representative and class plaintiffs, or have transmitted to the representative and class plaintiffs periodic statements, and in connection with the extension of credit to the representative and class plaintiffs reflected in their secured loans: (a) misstated the true effective annual percentage rate of interest by reason of the failure to include in the computation thereof the amounts required by the representative and class defendants to be paid on account of insurance premiums and taxes, which increase the effective annual percentage interest rates; and (b) intentionally and knowingly failed to disclose that payments on account of insurance premiums and taxes made by the representative and class plaintiffs and accumulated by the representative and class defendants bear no interest and are not credited to the borrowers' principal debt balances."

After careful consideration of oral argument, the briefs of counsel and the record, we have concluded that the above-mentioned district court judgment must be affirmed for the reasons stated in the district court opinion. See Stavrides v. Mellon National Bank & Trust Co., 353 F.Supp. 1072, 1079–1080 (W.D. Pa.1973).[2] Similar reasons were advanced by the District Court for the District of Columbia in rejecting a similar claim under the Truth-In-Lending Act. See Graybeal v. American Savings & Loan Ass'n, 59 F.R.D. 7, 18–20 (D.D.C. 1973).

Supplementing the reasons given in the district court opinion, we note the following:

(1) The term "escrow" has been used in the mortgage business to describe monthly tax and insurance prepayments even though such payments are not segregated and without regard to whether interest is paid to the mortgagor. See First Federal Savings & Loan Ass'n v. Board of Equalization, 182 Neb. 25, 26, 152 N.W.2d 8, 9 (1967);[3]

(2) The term "escrow" (15 U.S.C. § 1605(e)(3)) has been used by courts where one of the parties to the escrow agreement held the escrow funds and no independent escrow holder of the fund was contemplated by the agreement. See, e. g., Gulf Petroleum, S. A. v. Collazo, 316 F.2d 257, 261 (1st Cir. 1963);

(3) Since the mortgagor has no right to withdraw his monthly tax and insurance payments, the arrangement challenged by plaintiffs-appel-

---

1. A May 3, 1973, district court order made the certification and determination contemplated by F.R.Civ.P. 54(b) and entered final judgment dismissing Counts Fourth through Ninth of such complaint. The parties agree that if final judgment for the defendants was correctly entered on the Fifth Count, the defendants are entitled to entry of judgment in their favor on the other counts related thereto (Counts Seventh-Ninth). Also, plaintiffs concede that they "have not pursued Count Four in this appeal" and that they have consented to the dismissal of "Count Six" (see page 3 of appellants' brief).

2. Other federal courts have expressly relied upon the district court opinion in *Stavrides* in dismissing similar claims. See Kinee v. Abraham Lincoln Federal Savings & Loan Ass'n,

365 F.Supp. 975 (E.D.Pa.1973); Munn v. American General Investment Corp., 364 F. Supp. 110 (S.D.Tex., 1973); Williams v. American Savings Ass'n, No. CA–3–6350–D (N.D.Tex., March 26, 1973). See also Umdenstock v. American Mortgage & Investment Co. of Oklahoma City, 363 F.Supp. 1375 (W.D. Okl.1973).

3. The case of Liberty National Life Insurance Co. v. United States, 463 F.2d 1027, 1030 n. 6 (5th Cir. 1972), relied upon by appellants in interpreting the term "escrow," is distinguishable from the instant case since in *Liberty National* the court was concerned with interpreting the word "escrow" as it applied to mortgages insured by the Federal Housing Administration, which are subject to requirements not applicable to private mortgages.

lants complies with the following language of the Restatement (Second) of Trusts, § 12, Comment 1 (1959):

> "Where the deposit is in escrow, that is where the money is to be paid to a third person on the happening of a designated event and in the meantime the depositor has no right to withdraw the money, it depends upon the manifestation of the intention of the parties whether the bank may use as its own the money deposited or whether the money shall be held in trust. Such a deposit ordinarily indicates an intention that the bank may use the money as its own . . . ." [4]

For the foregoing reasons, the district court order will be affirmed.

---

4. We note that the staff of the Federal Reserve Board, which was designated by Congress to administer and interpret the Truth-In-Lending Act, has consistently concluded that the nonpayment of interest on such escrow deposits need not be taken into account in computation of the finance charge or the amount financed. In a Federal Reserve Board Public Information Letter dated July 15, 1971, No. 504, 4 CCH Consumer Credit Guide ¶ 30,-707, Thomas J. O'Connell, General Counsel of the Federal Reserve Board, stated:

"[Y]ou inquire whether the failure to allow interest on escrow deposits under a real estate mortgage should be reflected in the finance charge disclosed under Regulation Z. . . .

"Section 226.4(e) . . . specifically excludes escrow deposits of the type you describe from the finance charge. In addition, although § 226.8(e) . . . provides that certain 'required deposit balances' must be excluded before determining the 'amount financed' (which would result in their being reflected in a higher annual percentage rate), that section specifically provides that it does not apply to escrow accounts of the type covered by § 226.4(e) . . . . By these two provisions it was the Board's intention to allow computation of the annual percentage rate on real estate mortgages without regard to whether escrows were required, and by extension, without regard to whether interest was paid on those deposits. Consequently, it is the staff's view that neither the requirement of escrow deposits, nor the failure to pay interest on them, must be reflected in the annual percentage rate or finance charges disclosed under Truth-In-Lending."

Similar conclusions have been expressed in Public Information Letters by J. L. Robertson, Vice-Chairman of the Federal Reserve Board, the Board member given specific responsibility for Truth-In-Lending (Letter No. 265, February 24, 1970) and by Griffith L. Garwood, then Chief of the Truth-In-Lending Section (Letter No. 580, March 8, 1972). 4 CCH Consumer Credit Guide ¶ 30,518 and ¶ 30,820.

As recently as May 25, 1973, in another Public Information Letter, 4 CCH Consumer Credit Guide ¶ 30,980, the Federal Reserve Board Staff reiterated its position. It was there stated:

" . . . The Regulation, however, does not provide that the loss of interest on an escrow account represents a charge for the credit transaction to the customer. Under the same line of reasoning, the Regulation provides in § 226.4(f) . . . that interest or dividends paid by a creditor on a customer's deposits or investments held by the creditor shall *not* be deducted from the amount of the finance charge or taken into consideration when computing the annual percentage rate.

"By these provisions, it was the Board's intention to allow computation of the annual percentage rate on real estate mortgages without regard to whether escrows were required, and by extension, without regard to whether interest was paid on those deposits. Consequently, neither the requirement of escrow deposits, nor the failure to pay the interest on them, must be reflected in the annual percentage rate or finance charges disclosed under Truth in Lending.

"It might be noted that the Act allows a creditor to round the annual percentage rate to the nearest quarter of 1%, so that it is unlikely that the effect of the failure to pay interest on escrow accounts would require a higher annual percentage rate to be disclosed in most cases (See § 226.5(b)) . . . . Also any disclosures taking into account the lack of escrow interest would often soon become inaccurate because such disclosures would be based upon the escrow requirements at the time the transaction is entered into, while the amount required for escrowed items typically continues to increase during the life of the mortgage as taxes increase. Finally, viewing such lost interest as a finance charge would further complicate already complicated disclosures perhaps to the consumer's detriment, and would certainly increase the burden to the creditor."