Roger O. HALVERSON, d/b/a Convenient Food Mart #802 (hereafter in this caption only the plaintiff's name and the number of the store will be given and the words "d/b/a Convenient Food Mart" will be omitted), et al., Plaintiffs,

v.

CONVENIENT FOOD MART, INC., a corporation, et al., Defendants.

P. J. P. CORPORATION, an Illinois Corporation, on behalf of itself and all others similarly situated, Plaintiff,

v.

CONVENIENT FOOD MART, INC., et al., Defendants.

Rita J. McCOY, on behalf of herself and all others similarly situated, Plaintiffs,

v.

CONVENIENT FRANCHISE LEASING CORP., et al., Defendants.

Nos. 70 C 499, 72 C 1848 and 72 C 1860.

United States District Court,
N. D. Illinois, E. D.

Oct. 31, 1974.

Lawrence Walner, Edward Berman, Chicago, Ill., Roy B. Schneider, Morton Grove, Ill., for plaintiff in No. 72 C 1848.

Barry L. Kroll, Chicago, Ill., for Bresler Ice Cream Co. in No. 72 C 1848.

Charles C. Kirshbaum, Chicago, Ill., for Convenient Food Mart, & Conv. Franchise in No. 72 C 1848.

Earl A. Jinkinson, Robert D. Tyler, Jr., Winston & Strawn, Chicago, Ill., for Scot Lad Foods, Inc. in No. 72 C 1848.

Donald C. Gancer, of Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., and Warren D. Mulloy, Philadelphia, Pa., Specks & Goldberg, Ltd., Chicago, Ill., for plaintiffs in No. 72 C 1860.

Barry L. Kroll and Charles C. Kirshbaum, Chicago, Ill., for Bresler Ice Cream Co. and Convenient Franchise Leasing Corp. in No. 72 C 1860.

Earl A. Jinkinson and Robert D. Tyler, Chicago, Ill., for Scot Lad Foods, Inc. in No. 72 C 1860.

## MEMORANDUM AND ORDER ON MOTION FOR CLASS CERTIFICATION

MARSHALL, District Judge.

These private antitrust actions are brought by present and former Convenient Food Mart franchisees on behalf of themselves and others similarly situated.* Plaintiffs invoke the jurisdiction of this court pursuant to Sections 4, 15 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 25, 26, and seek both money damages and an injunction. Presently pending is plaintiff's motion to certify a national class of plaintiffs pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

Defendant Convenient Food Mart, Inc. (CFM) utilizes a stratified system for granting franchises. CFM licenses

Warren D. Mulloy, Philadelphia, Pa., Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., John O. DeMaret, Chicago, Ill., for plaintiffs in No. 70 C 499.

George Brode, Chicago, Ill., for Scott Jefferies.

Richard G. Crotty, Chicago, Ill., for E. N. Bonovich.

Albert Koretzky, Chicago, Ill., for Ralph W. Mattson.

Winston, Strawn, Smith & Patterson, John W. Stack, Chicago, Ill., for Scot Lad Foods in No. 70 C 499.

Charles C. Kirshbaum, Chicago, Ill., for Convenient Foods in No. 70 C 499.

Barry L. Kroll, Chicago, Ill., for Bresler Ice Cream Co. in No. 70 C 499.

---

* The third consolidated amended complaint represents the pleadings of plaintiffs in both cases. A third case, *Worrell v. Convenient Food Mart, Inc., et al.*, 73 C 1308, also has been assigned to my docket. Plaintiffs in that case, however, neither have adopted the consolidated complaint nor moved for class certification.

regional franchisors in designated areas as outlets for CFM retail franchises. Those desiring retail franchises must negotiate with the regional franchisor in his area. CFM maintains some control, however, by requiring the regional franchisor to grant retail franchises only in accord with the terms of a standard agreement which is "attached and expressly made a part" of the regional franchisor agreement with CFM.

The regional franchisors in every region, except Region 8—Chicago, are independent business entities. In Region 8 CFM is the regional franchisor. The named plaintiffs in the cases before me are all former retail franchisees. Plaintiff McCoy was a retail franchisee in Nebraska and obtained her franchise from CFM of Nebraska, Inc. Plaintiffs Hoaglund and Paul were retail franchisees from the New England region and obtained their retail franchises from the region franchisor, CFM of New England, Inc.

Defendant Scot Lad Foods, Inc. owns 50% of the stock of defendant CFM. One of its divisions, Meadowmoor Dairy, is a Chicago dairy which has sold milk to all named plaintiffs other than McCoy. The owners of defendant Bresler Ice Cream Company own 50% of the stock of CFM. Bresler manufactures and sells ice cream products from its Chicago plant and has sold ice cream products to all plaintiffs.

Plaintiffs allege a monopoly, an attempt to monopolize and a conspiracy in the sale and distribution of food mart equipment and products to the public. The essence of plaintiffs' claim is that CFM pursuant to a conspiracy has used its registered name in violation of Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, in that the franchise agreement requires each franchisee to purchase and use only such equipment and products as are designated by CFM and to order exclusively from suppliers approved for quality by CFM. Plaintiffs aver that as a result of these unlawful acts, they were and are forced to pay higher rent and higher prices for products.

■ At the outset I note that if this suit is to proceed as a class action, it must be certifiable under Rule 23(b)(3). Contrary to plaintiffs' contentions, this case is not appropriate for a Rule 23(b)(2) class action. The advisory Committee Notes to Rule 23 explain that subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Where as here it appears that a substantial number of plaintiffs and a substantial portion of the class they seek to represent can recover only money damages, certification under 23(b)(2) is inappropriate. Money damages is the only relief available to former franchisees. See, e. g., *Bogosian v. Gulf Oil Corp.*, 1973–2 Trade Cases ¶ 74,840, at 95,731–732 (E.D.Pa.1973).

■ The difficult inquiry is whether this case should proceed as a class action under Rule 23(b)(3). Particularly relevant to this question is the requirement that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." That is, the class claims must have a dominant, central focus. Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy? *DiCostanzo v. Chrysler Corp.*, 57 F.R.D. 495 (E.D.Pa. 1972).

■■ In antitrust suits brought under Rule 23(b)(3) courts generally adopt a bifurcated approach in dealing with the problem of predominance. When the asserted statutory violation can be effectively adjudicated apart from damages, liability will be determined in a class proceeding while the question of damages awaits proof on an

individual basis. See, e. g., *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *State of Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484 (N.D.Ill.1969). Thus the presence of individual damage questions in this controversy does. not defeat the class action.

The pivotal question is whether defendants' liability depends on legal and factual issues which are the same for all Convenient franchisees wherever located. Resolution of this question requires an analysis of the specific issues to be litigated and of the proof that will be required at trial. *Abercrombie v. Lums, Inc.,* 345 F.Supp. 387, 390 (S.D.Fla. 1972).

■ The essence of plaintiffs' claim is that illegal tying arrangements were imposed upon them. Plaintiffs' entire case turns on whether these arrangements indeed exist. They can be shown by (1) proof of contractual obligations imposed in the franchise agreements, or (2) proof that the franchisee was required through his dealings with the seller, extrinsic to any express agreement, to purchase an unwanted product. See *Abercrombie v. Lums, Inc., supra,* at 390. Prevailing authorities indicate that these modes of proof also provide a reasonable test for determining the propriety of a class action.

■ *Siegel v. Chicken Delight, Inc.,* 271 F.Supp. 722 (N.D.Cal.1967), *modified sub nom. Chicken Delight, Inc. v. Harris,* 412 F.2d 830 (9th Cir. 1969), is the leading authority in class action cases in the franchise area. If the sole question is whether a standardized trademark protection clause, however worded, constitutes a violation of the antitrust laws, a class action is the appropriate mode for testing the legality of the clause for it is the standard form franchise agreement which forms the focal point of the allegedly illegal acts and thus establishes a "common nucleus of operative facts" permitting class treatment. 271 F.Supp. at 726. Coercion remains a necessary element of an unlawful tying arrangement but it is inferred on a class-wide basis; a contractual provision is coercive in and of itself since it is backed by the force of law. See *7-Eleven Franchise Antitrust Litigation,* 1972 Trade Cases ¶ 74,156 (N.D.Cal. 1972). Liability to the class can be established without proof of individual claims. See also, *Butkus v. Chicken Unlimited Enterprises, Inc.,* 1971 Trade Cases ¶ 73,780 (N.D.Ill.1971).

■ On the other hand, the Court of Appeals in *Chicken Delight, Inc. v. Harris, supra,* distinguished claims under the franchise agreement from claims arising by virtue of activities of the franchisor which were not specifically authorized or compelled by the agreement itself. When dealings extrinsic to the contract are challenged, the particular situation of each franchisee must be examined. Individual questions then predominate and hence class treatment is inappropriate. See also, *Smith v. Denny's Restaurants, Inc.,* 62 F.R.D. 459 (N.D.Cal.1974); *Bogosian v. Gulf Oil Corp., supra; Abercrombie v. Lums, Inc., supra; 7-Eleven Franchise Antitrust Litigation, supra; Van Allen v. Circle K Corp.,* 58 F.R.D. 562 (C.D.Cal. 1972); ·*DiCostanzo v. Chrysler Corp., supra.*

■ Plaintiffs allege that members of the class were subject to relatively uniform treatment by defendants. Attached to the complaint is a Chicagoland Franchise Agreement and Lease which plaintiffs allege is representative of the terms and conditions of all franchise agreements and leases (Complaint, ¶ 12). Now after the completion of class discovery, plaintiffs have submitted to the court four additional franchise agreements allegedly· representing all other regions. All of the franchise

agreements contain the following provision:

> Owner agrees to purchase, sell and use such products as are required for the operation of the business as designated by CFM [Regional Franchisor], and to be ordered exclusively from suppliers approved by CFM [Regional Franchisor] for quality. (Ex. E, G, ¶ B–1, Ex. F, H, ¶¶ C–1, C–20, Complaint Ex. A, ¶¶ C–1, C–20.)

Defendants do not deny that this provision is common to all franchisees. Indeed they admit its existence in all agreements and further admit that they were responsible for its inclusion in the franchise agreements:

> Each [regional franchisor] agreement requires that, in granting local licenses, the Regional Franchisor utilize the form of local franchise agreement attached thereto as an exhibit, or as may be modified from time to time.
>
> Moreover, prior to December of 1972, the form of the local franchise agreement utilized included the right of the Regional Franchisor to designate products and purveyors and the corresponding obligation of owner franchisees to purchase designated products from designated purveyors. (Def.Rep., at 12–14.)

Thus, as in *Siegel v. Chicken Delight, Inc., supra,* one question here concerns the legality of a standard clause. Defendants' antitrust exposure vis-a-vis this particular provision can be efficiently and effectively adjudicated in a class proceeding. It may well be that no antitrust violations are involved. Yet that possible result does not defeat a class action at this juncture of the suit.

The lease allegations present a different situation. Nowhere in the franchise agreement is it provided that the franchisee must lease his premises from the Regional Franchisor. Plaintiffs attempt to bring themselves under the *Siegel* holding by pointing to various provisions of both the franchise and regional

franchisor agreements, the practical economic effect of which they assert when read together and considered with business practice indicates that all franchisees had to lease business premises from the regional franchisors. The lease allegations fit squarely within the scope of *Chicken Delight, Inc. v. Harris, supra,* and its progeny.

In order to establish an illegal tying arrangement arising from business conduct, the franchisees must prove that they were coerced, not merely persuaded, into purchasing unwanted products. *Ford Motor Co. v. United States,* 335 U.S. 303, 316–20, 69 S.Ct. 93, 93 L. Ed. 24 (1948); see also, *Abercrombie v. Lums, Inc., supra,* at 391; *Bogosian v. Gulf Oil Corp., supra,* at 95, 734. Unlike the product designation situation, discussed above, the case is not one of interpreting the legal effect of one standard clause of a contract. A determination of the antitrust consequences of the alleged lease tie-in, on the theory upon which it has been set forth by plaintiffs, requires a factual determination regarding each lease that there was such economic coercion in fact as to constitute an illegal tie-in agreement. Such proof, it appears to me, will necessarily vary from franchisee to franchisee. Cf., *HEW Corp. v. Tandy Corp.,* 1974–2 Trade Cases, ¶ 75,190 (D.Mass.1974). The question of whether there are illegal tie-ins therefore of necessity requires proof of exertion of economic coercive force as to each individual franchisee.

If the named plaintiffs establish that they were forced to lease business premises from CFM, it would not follow that other franchisees were similarly coerced. While the same questions of fact exist with respect to the claims of every member of the purported class, a conclusion as to one member is not common or determinative, or even relevant when the question arises with respect to another member. The predominating questions are individual ones and not common. See, e. g., *Lah v. Shell Oil Co.,* 50 F.R.D.

198 (S.D.Ohio 1970). Thus as to the lease allegations, the issue of liability, as well as damages, may vary from franchisee to franchisee and thereby class certification is improper.

A basic function of the predominance element is to place the superiority of method requirement in a pragmatic context in order to evaluate the contribution which class treatment would make to efficient settlements of multiparty controversies. The historic function of the common question class suit—to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated" —remains a compelling element in the Rule 23(b)(3) rationale. In determining these economies a district judge is unhampered by traditional classifications and is given a large measure of discretion in balancing conflicting interests. See *Siegel v. Chicken Delight, Inc., supra,* at 724. Class certification can be made at such time and under such circumstances as will best fit the needs of a particular case. The greater the number of individual questions which must be tried, the greater becomes the probability that judicial economy is better served by collateral estoppel. Considered also in this balancing are possible antagonisms between class members.

Where as here only one issue is appropriate for class treatment and antagonisms possibly exist between not only former and present franchisees, but also between present franchisees named as plaintiffs and those not so named, I cannot conclude that a class action is the superior method for determining the issues presented in this controversy. See, e. g., *Matarazzo v. Friendly Ice Cream Corp.,* 62 F.R.D. 65 (E.D.N.Y.1974); *Seligson v. Plum Tree, Inc.,* 61 F.R.D. 343 (E.D.Pa.1973); *McMackin v. Schwinn Bicycle Co.,* 354 F.Supp. 1154 (N.D.Ill.1973); *Lupia v. Stella D'Oro Biscuit Co.,* 1974 Trade Cases, ¶ 75,046 (N.D.Ill.1972); *Gaines v. Budget Rent-A-Car Corp. of America,* 1972 Trade Cases ¶ 73,860 (N.D.Ill.1972).

Accordingly, plaintiffs' motion to certify a national class is Denied. For the same reasons the motion for local class certification also is Denied. In that all plaintiffs have indicated to the court that they would seek to amend their complaint if the class motions were denied, plaintiffs are given 20 days from the date of this order to amend their pleadings. Ruling on the pending motions for partial summary judgment is deferred. Cause set for pretrial conference December 6, 1974 at 9:00 a. m.