## DUBUQUE COMMUNICATIONS CORPORATION, Plaintiff,

v.

## AMERICAN BROADCASTING COMPANIES, INC., Defendant.

### No. 73 C 1473.

United States District Court, N. D. Illinois, E. D.

May 20, 1977.

Michael A. Stapleton and Daniel P. Ernst, Stapleton, Ernst & Sprengelmeyer, East Dubuque, Ill., for plaintiff.

Herbert A. Bergson, James H. Kelley, James R. Loftis, III, and Robert W. DeVos, Jr., Bergson, Borkland, Margolis & Adler, Washington, D. C., Wesley G. Hall and Rodney D. Joslin, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff Dubuque Communications Corporation (Dubuque), which owned and operated television station KDUB-TV in Dubuque, Iowa, has brought this suit alleging violations of the antitrust laws by defendant American Broadcasting Companies, Inc. (ABC). The core of the complaint is the assertion that ABC violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by utilizing its power to grant network affiliation and the use of ABC programming and the ABC tradename and trademark to coerce Dubuque into obtaining its broadcasting signal through American Telephone and Telegraph (AT&T). Dubuque therefore is alleging that ABC enforced an illegal product tie-in by making use of AT&T a condition for the grant of the right to obtain a first call on ABC television programming.

This case was brought to trial on February 17, 1976. Both parties presented evidence and testimony on the issue of coercion, and extensive documentary evidence and several depositions were also introduced. Defendant has renewed its motion for dismissal pursuant to F.R.Civ.P. 41(b).

After consideration of the evidence and the post-trial submissions requested by the court, the court now files this opinion which constitutes the findings of fact and conclusions of law required by F.R.Civ.P. 52(a).

This court concludes that plaintiff has failed to prove that ABC has committed any violation of the Sherman Act, and that there is no meaningful evidence to substantiate a finding that ABC sought to impose any illegal product tie-in.

Initially the court notes that the April 27, 1970, affiliation agreement between the parties neither expressly nor impliedly contains any condition requiring Dubuque to utilize AT&T facilities for signal transmission. While the contract does make plaintiff responsible for the costs of signal delivery, it does not limit plaintiff's choice among the alternative means for such delivery. To the contrary, Rider I to the affiliation agreement speaks of plaintiff's financial responsibility to "American Telephone & Telegraph Company *or other carrier*". (Emphasis added.)

Since there is no contractual foundation for the alleged tie-in requirement, the burden is on Dubuque to prove from all the extrinsic circumstances surrounding and including the April 1970 affiliation agreement that the cause of plaintiff's use of AT&T was a reasonable belief that ABC forced it to accept such a condition. *Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D. 331 (N.D.Ill.1974); *Abercrombie v. Lum's, Inc.,* 345 F.Supp. 387, 390 (S.D.Fla.1972). Plaintiff has failed to satisfy this obligation.

The evidence clearly indicates that ABC at all times had a policy requiring stations seeking affiliation for small market areas such as that offered by Dubuque to pay for the costs of signal reception. The policy applied regardless of whether the signal was carried by AT&T, microwave systems, or through "off-air" delivery. It is also clear that plaintiff was aware of this policy from almost the inception of negotiations with ABC.

While the owners of KDUB-TV were not men extensively experienced in the televi-

sion broadcasting business, the record does support the finding that as early as 1968 they had begun research into the costs of signal delivery. In 1968 Gerald Green, one of the station's principal owners, contacted AT&T, and received by letter information concerning the costs of signal delivery.

It is also clear that Mr. Green was aware of alternative means of signal delivery, despite his testimony that he did not fully understand these methods. It is shown by the evidence that officers and agents of KDUB-TV had visited various other television stations in the Midwest in the course of their research into broadcasting methods. These included stations utilizing private microwave relay. Conversations also covered the use of off-air signal delivery systems. Also, various means of signal transmission were considered by KDUB-TV officials for the purpose of expanding the station's broadcasting to the LaCrosse, Wisconsin, area.

Additionally the evidence reveals that Gerald Green paid $19,000 to an ABC employee, Thomas Sullivan, who was acting without authority from ABC, in order to obtain an ABC affiliation which would include an AT&T hook-up at plaintiff's station. Green repeatedly called Northwestern Bell requesting installation of a delivery system at his station. After being informed that ABC had not authorized such installations at its own expense, Green did not make any request to remove those facilities which had already been completed.

At no point in the negotiations did plaintiff ever indicate any opposition to use of AT&T for signal reception, nor did it ever make any statement revealing a preference for any alternate method. Nor was any objection made after the affiliation agreement to Northwestern Bell.

The only coherent conclusion that can be drawn from this evidence is that plaintiff, which had reason to be aware of alternative signal transmission systems, knew the virtues and costs of AT&T delivery and had freely decided to use that method.

Under these circumstances Dubuque cannot contend that but for the alleged coercion by ABC it would not have utilized AT&T or that it would have been more prompt in dropping AT&T.

This being the case, plaintiff has not satisfied the burden for proof of a Sherman Act tie-in violation. It has not shown that ABC caused the television station to take a course it would not have otherwise traveled, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 128–29, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Since it can be found that Dubuque would have utilized AT&T signal transmission in any event, causation for the alleged injury cannot be laid at the doorstep of ABC. As another court has held

"[I]f it were shown that a class member purchased feed [the tied in product] . . . because he believed it to be the best product available for his purposes, or for any reason other than the alleged tie, he would have failed to establish the essential causation element of his treble damage claim." *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443, 449 (M.D.Ga. 1975).

*See also Carlson Companies, Inc. v. Sperry & Hutchinson Co.*, 374 F.Supp. 1080, 1087 (D.Minn.1974).

It is apparent from the evidence that in fact the question of signal delivery was a matter of relative indifference to the plaintiff. While Dubuque through its counsel made an extensive and intense presentation in behalf of its contract demands, and threatened suit in the event that network affiliation was denied, Dubuque never indicated that there was any controversy regarding signal delivery. Indeed counsel for Dubuque indicated in its letters to ABC that it expected to utilize the existing AT&T lines to carry the programming. While plaintiff may have desired ABC to bear the cost of signal delivery, its counsel was aware that this was contrary to network policy and did not stress this issue.

Furthermore, it is apparent that counsel for the plaintiff was informed of the details of the ABC contract offer prior to the date of that agreement. The court finds more

credible that evidence and testimony indicating that Gerald Green was aware of the contract terms in advance of April 27, 1970.

At that meeting it is conceded that no objection was made to the provisions of the affiliation agreement dealing with signal delivery. Nor is it alleged that any representative of ABC specified that Dubuque was obligated to utilize AT&T facilities. Dubuque never indicated any interest at this meeting in any other means of signal delivery.

■ In the above factual context it is evident that plaintiff cannot show that it was coerced into accepting AT&T signal transmission. Proof of coercion at least requires evidence that the undesired condition was imposed over plaintiff's objection, or at the explicit refusal of the defendant to do otherwise. When a condition is accepted without objection the element of coercion becomes totally speculative.

As one court has stated

"ABC's preliminary bargaining position may have influenced [plaintiff] but [plaintiff] did not persevere long enough with its ideal lineup to feel any economic pressure from ABC, and we cannot now know whether ABC would ever have tried to bring any such pressure to bear." *American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 446 F.2d 1131, 1137 (2d Cir. 1971), *cert. den.*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

*See also, U. S. v. Loew's, Inc.*, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); *Capital Temporaries, Inc. v. Olsten Corp.*, 365 F.Supp. 888 (D.Conn.1973), *aff'd* 506 F.2d 658 (2d Cir. 1974).

■ Nor can the coercion necessary to sustain a finding of an illegal tie-in be inferred from mere economic inequality between the parties to a contract. In reversing a trial court where this argument was asserted, the Third Circuit recently made an explicit rejection of this theory in *Ungar, et al. v. Dunkin' Donuts, et al.*, 531 F.2d 1211 (3d Cir. 1976). The court limited the proof for a tie-in claim as follows:

"Where, as here, plaintiff . . . place[s] no reliance on express contractual tie-ins, [he] must prove that his purchases were coerced as an element of establishing a prima facie case of illegal tying." (At p. 31.)

In sum, the court finds no basis for the contention that ABC imposed an illegal tie-in of AT&T systems delivery upon the plaintiff. No such requirement, either express or implied, can be found in the contract. Nor has the plaintiff shown that its choice of AT&T delivery was the result of coercion on the part of ABC. Rather, the court finds that all intrinsic evidence and circumstances indicate that the decision to utilize AT&T was a voluntary decision made after some research by the plaintiff. The parties dealt with each other under the understanding that Dubuque had chosen AT&T delivery, and the question of signal transmission was not the subject of any meaningful discussion. These being the facts, plaintiff has failed to prove that ABC violated the antitrust laws, and defendant ABC's motion to dismiss pursuant to F.R. Civ.P. 41(b) should be, and hereby is, granted, and the instant cause is ordered dismissed.