Harold V. FOGEL and Jordan M. Fogel, Plaintiffs,

v.

Jacques WOLFGANG et al., Defendants.

No. 67 Civ. 1629.

United States District Court
S. D. New York.

May 9, 1969.

---

1. An annotation citing these, as well as some state court decisions to the same effect, can be found in 71 A.L.R.2d 973, 980.

**214**

Kaufman, Taylor, Kimmel & Miller, by Stanley L. Kaufman, Shephard S. Miller and Allan K. Peckel, New York City, for plaintiffs.

Weil, Gotshal & Manges, New York City, Trenkamp, Brown & Douglas, by Robert H. Trenkamp and Malcolm C. Douglas, Cleveland, Ohio, of counsel, for all defendants except A. T. Colwell and Jacques Wolfgang.

Sylvester, Harris & Burstein, by Donald L. Kuba and Charles L. Sylvester, New York City, for Jacques Wolfgang.

Alexander & Green, by Edward E. Rigney, New York City, for A. T. Colwell.

## OPINION

TYLER, District Judge.

■ This suit is brought under Section 27 of the Securities Exchange Act ("the Act"), 15 U.S.C. § 78aa, to recover damages caused by alleged violations of Section 10(b) of the Act, 15 U.S.C. § 78 j(b), and Rule 10b–5, 17 C.F.R. 240.10 b–5 promulgated thereunder.[1] Plaintiffs have moved for an order pursuant to Rule 23, F.R.Civ.P., that this litigation proceed as a class action.[2]

Plaintiffs, Harold and Jordan Fogel, purchased common stock of Rand Development Corporation ("Rand"), one of the defendants in this suit, during the relevant period described below. Rand is an Ohio corporation with approximately 310,000 shares of common stock outstanding.[3] Rand may be generally described as a research and development corporation. More particularly, it has been engaged for some time in research to find a cure for cancer and a test to discover the presence of that disease in .the human body. The individual defendants in this action are H. J. Rand, chief executive officer and principal stockholder of Rand, J. Elroy McCaw, the board chairman, and the other directors of the corporation.

The complaint alleges that the individual defendants conspired to and did inflate the price of Rand common stock both through individual action and through use of the corporation; that between July 13, 1966, and January 20, 1967, false information concerning a "cancer vaccine" and a "cancer test" was disseminated to the investing public by the defendants pursuant to a conspiracy to misinform the public; that during this period the price of the stock was inflated by the false information from $6.00 per share to over $50.00 per share; that during this time various defendants sold or pledged shares of Rand at inflated prices; that as a consequence of this course of conduct many thousands of shares were purchased by the public at inflated prices; and that plaintiffs

1. In addition there are several state law claims which need not be discussed on this motion.

2. Also argued with this motion was one by the plaintiffs to compel H. J. Rand, Marcel Rand and Jacques Wolfgang to close and sign their depositions. The first two have apparently done so. See Douglas Affidavit. Wolfgang does not oppose the motion, but his counsel requests time to communicate with his client. An order may be settled to that effect.

3. The common stock is divided into two classes, which may be treated as one for purposes of this motion, but which may require modification of the class at a later stage.

did so, and are typical members of the public which suffered damages.

■ Without considering or deciding the merits of this controversy,[4] it will be helpful to describe the primary publications on which the plaintiffs base their allegations. On July 13, 1966, the defendants published and disseminated a report to the shareholders covering the fiscal year ending March 31, 1966, in which appeared statements concerning the cancer research being conducted by Rand, which statements the plaintiffs allege to be false and misleading.[5] On the front page of the August 19, 1966 issue of The Plain Dealer, a Cleveland newspaper, appeared an article by John E. Bryan, the paper's financial editor, describing specific cases treated by the Rand "cancer vaccine" and discussing the effect of these results upon Rand stock. Exhibit B to Kaufman Affidavit. That afternoon a shorter article on the same subject appeared in The Cleveland Press. Exhibit C to Kaufman Affidavit. On the next day, another article on the "cancer vaccine" appeared in The Plain Dealer on the front page, and the author specifically states that his source for information was H. J. Rand. Exhibit D to Kaufman Affidavit. Two articles on the "vaccine" appeared in the December 1966 and January 1967 issues of Pageant magazine. See Exhibits E and F to Kaufman Affidavit.

Plaintiffs seek to define the purported class as all persons who bought Rand common stock between July 13, 1966, the date of the shareholder report, and January 20, 1967, the date on which the Securities Exchange Commission suspended trading in Rand common stock. In the sur-reply affidavit of Malcolm Douglas certain facts concerning the purported class are developed. During the relevant time period, 885 individuals purchased Rand common in their own names. As is admitted by defendants' counsel, this figure excludes purchases by brokerage houses since it could not be determined from stock transfer records whether these purchases were in "street name" for individuals or merely for the account of the firm itself. Of the 885 persons who purchased Rand stock in their own names, 603 resided in the Northern District of Ohio and only 24 were residents of the Southern District of New York. In other words, a large number of those persons in the prospective class which are counted by defendants are concentrated in the Cleveland area.

Plaintiffs have clearly demonstrated that the proposed class meets three of the four criteria of Rule 23(a), namely, that:

"* * * (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law

---

4. Defendants insist that the merits of plaintiffs' claims have a substantial bearing on this motion. Although there is support for such a proposition in the decision of one district judge in this circuit, Dolgow v. Anderson, 43 F.R.D. 472, 501–503 (E.D.N.Y.1968), I persist in the notion that Rule 23 does not require an advanced trial of the merits on a class action motion. See Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y. March 20, 1969); Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968). On its face the new rule does not indicate that the merits are relevant, and it specifically requires the court to make an order concerning the nature of the action "[a]s soon as practicable after the commencement of an ac-

tion brought as a class action * * *". Moreover, it would appear that to require the plaintiffs at a pre-trial hearing "to convince the Court that there is a substantial possibility that they will prevail on the merits," Dolgow v. Anderson, *supra,* 43 F.R.D. at 501, would have the effect of modifying the current law on summary judgment in cases where the only possible method for plaintiffs to proceed is by class action. Compare Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1967) (Eisen I) with City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295, (2d Cir. April 10, 1969).

5. The shareholder report is not part of the present record.

or fact common to the class, * * * and (4) the representative parties will fairly and adequately protect the interests of the class."

On defendants' own figures, it is obvious that there are too many members of the potential class (885) to admit of the possibility of joinder.[6] The course of conduct of the defendants, the asserted false and misleading nature of the publications, their materiality, and their effect on the market price of Rand common stock are common issues sufficient to meet Rule 23(a) (2). Finally, there is no present indication that the interests of the representatives are in actual or potential conflict with those of the other members of the proposed class, Green v. Wolf Corp., 406 F.2d 291, at 298 (2d Cir. Dec. 9, 1968), and the quality of plaintiffs' counsel is such as to assure vigorous prosecution of this suit, Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) (Eisen II). Thus, Rule 23(a) (4) is met.

Defendants vigorously argue that plaintiffs' claims are not "typical of the claims * * * of the class" as required by Rule 23(a) (3). Defendants make two arguments on this score. The first is that plaintiffs, who bought all their Rand stock between December 22, 1966, and January 20, 1967, are not in the same position as a purchaser who acquired his shares shortly after the report to shareholders of July 13, 1966, or one who purchased shortly after the August 19 and 20, 1966, articles in the Cleveland newspapers. I am persuaded that this situation is virtually analogous to that faced by the Court of Appeals for the Second Circuit in Green v. Wolf Corp., *supra,* where that Court stated:

"Rule 23(a) (3)—requiring that Green's claims be typical of the claims of the class—raises a more complex question. Since Green relies entirely on his purchase of shares after the third prospectus we are presented with the question as to whether he may represent those who purchased before the last prospectus was issued. See Dolgow v. Anderson, 43 F.R.D. 472, 492 (S.D.N.Y.1968). Because it appears that the faulted misstatements alleged in the first two prospectuses are also present in the third prospectus, it would be logical and efficient to permit Green to represent all the purchasers, at least with respect to the common misrepresentations. Green should be permitted to present the elaborate proof of misstatement, intent, effect on price, and so on, that any purchaser of Wolf's stock between June 1961 and 1963 would need in order to succeed." 406 F.2d at 299.

As I have already stated, plaintiffs must prove all the common issues of fact and law which require a substantial amount of evidence. The only material misstatement alleged is that Rand had developed an effective "cancer vaccine" and "cancer test", and this statement is alleged to have been made in each of the publications. On this score at least, plaintiffs' claims are typical of those of the class which they seek to represent.

The second argument made by defendants under Rule 23(a) (3) is based upon certain statements made by the plaintiffs during their depositions taken by defendants. The gist of these statements is that in purchasing Rand stock they relied primarily on the recommendation of one Eli Tockar, a business associate, who claimed to know several of the officers of Rand. Defendants argue that the plaintiffs are "tippees" since they relied upon supposed inside information and thus upon statements which are atypical of those of the class they seek to represent. These facts do not necessarily make plaintiffs' claims atypical. I suspect that, in the final analysis, more than a few of the group

6. Yet the largest estimate of the number in the proposed class (2800) is not unmanageable. See Green v. Wolf Corp., 406 F.2d 291, at 298 (2d Cir. Dec. 9, 1968).

which bought Rand common stock, an admittedly speculative security, thought they "had a friend who had a friend * * *". More importantly, however, these statements are relevant only to the issue of plaintiffs' reliance, an issue which is conceded by all to ·be one which may not be common to each member of the prospective class.[7] It would be anomalous to require under Rule 23 (a) (3) that plaintiffs show that their claims are identical on every issue to those of other members of the class, since Rule 23(b) (3) specifically allows class action treatment where the court finds that common issues "predominate".

Defendants finally argue that the proposed class does not meet the requirements of any subsection of Rule 23(b). Plaintiffs rely upon subsection (3), which states that the court must find:

" * * * that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * * "

It should be apparent from the earlier discussion that I have found that common issues predominate in this litigation. Aside from damages, the only significant issue which might not be common to the class is "reliance".[8] Efficiency will be served by allowing plaintiffs to litigate all the complex issues common to the class, and requiring individual proofs of reliance and damages at a later stage, if such proof ever becomes necessary. See Green v. Wolf Corp., supra, 406 F.2d at 301.

Defendants raise one argument concerning subsection (b) (3) which to my knowledge has never arisen in a decided case. One factor which the class action rule states should be taken into consideration under subsection (b) (3) is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum; * * * ". Rule 23(b) (3) (C). Based on the facts supplied in the Douglas sur-reply affidavit, *supra* p. 215, defendants argue that these claims should be concentrated in the District Court for the Northern District of Ohio, if anywhere, since a large percentage of the proposed class resides there, and these persons would be better able to appear by counsel in the action. See Rule 23(d) (2). I find that even if defendants' facts [9] and legal conclusions [10] be accepted, the other factors present in this case, as in Green v. Wolf Corp., supra, demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [11]

---

7. Plaintiffs argue that the publicity "campaign" by defendants undermined "the integrity of the market", and that purchasers in the prospective class need not show reliance on any specific written misinformation by defendants once this course of conduct by defendants is proved. See Green v. Wolf Corp., 406 F.2d 291 (2d Cir. Dec. 9, 1968). But they argue that even if each member of the class had to show reliance on one or more misleading statements, an issue which would obviously not be common to all claims in the class, common issues of fact and law predominate. Rule 23(b) (3).

8. See n. 7, *supra*.

9. As I have already indicated, defendants' figures exclude shares purchased in "street name" by brokerage firms located in the Southern District of New York.

10. Plaintiffs argue, with some cogency, that subsection (b) (3) (C) of Rule 23 presupposes the existence of litigation of claims based on the same transaction in another forum. However, there is some ambiguity in the rule on this point, and decision thereon is not necessary for the reasons stated in the text.

11. Defendants are not precluded from moving under 28 U.S.C. § 1404(a) to transfer this litigation to the Northern District of Ohio. Although the number of persons in the class residing in that district would be relevant, I have none of the other facts relevant to a transfer motion before me, and therefore I express no opinion on its merits.

One final matter arises from the papers of defendant Colwell. In essence, he argues that a class action should not be allowed against him since depositions and discovery heretofore had in this case establish that he has had no part in the alleged wrongdoing. In my view, this argument is substantially irrelevant on this motion. His remedy, if he can demonstrate that there are no factual issues as to him, is to move for summary judgment under Rule 56, F.R.Civ.P.

In accordance with the views expressed herein, I grant plaintiffs' motion to have this action proceed as a class action. The class is defined as all those persons who purchased Rand common stock between July 13, 1966, and June 20, 1967, unless and until such class is modified by further orders of the court under Rule 23(c) (1). There remains, of course, the question of notice requirements under Rule 23(c) (2), to which the parties have not addressed themselves. Thus, it is directed than an order be settled reflecting the matters heretofore determined and, in addition fixing a date for hearing of the questions of best practicable notice to the members of the class and at least initial responsibility for the expenses of such notice.