Reuben J. KATZ, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

CARTE BLANCHE CORPORATION,
Defendant.

Civ. A. No. 69-1326.

United States District Court,
W. D. Pennsylvania.

June 1, 1971.

Howard A. Specter, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

John H. Morgan, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

### MEMORANDUM OPINION ON MOTION BY PLAINTIFF FOR DETERMINATION OF CLASS ACTION

TEITELBAUM, District Judge.

This action is brought by the plaintiff on his own behalf and on behalf of each person similarly situated, who, at any time since July 1, 1969, has been an authorized holder of one of the defendant's credit cards. The gravamen of the complaint is that the defendant failed to properly make certain pre-transaction and transaction disclosures to its credit card holders regarding the application and computation of certain "finance charges" in violation of the Truth in Lending Act, 82 Stat. 146 et. seq. (15 U.S.C.A. § 1601 et. seq.), and Regulation Z (12 C.F.R. 226) promulgated thereunder. The "finance charges" which, allegedly, were improperly disclosed are three in number: (1) the annual charge which is imposed as a precondition to the extension of a credit card, (2) the late charge which is assessed unpaid balances which are overdue, and (3) the finance charge which is imposed upon unpaid balances which are outstanding pursuant to an extended payment plan. The disclosures with respect to those "finance charges" were, and are, allegedly contained in various written communications and statements issued to the members of the class. This motion is to have the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23.

To be maintainable as a class action under F.R.C.P. 23, the instant class must satisfy the prerequisites of Subsection (a) [1] and the provisions of Subsection (b) (3) [2] thereof. The plaintiff

---

1. "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

2. "[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any

has the burden of satisfying these prerequisites and provisions. City of Philadelphia v. Emhart Corporation, 50 F.R.D. 232 (D.C.E.D.Pa., 1970); Philadelphia Electric Company v. Anaconda American Brass Co., 43 F.R.D. 452 (D.C.E.D.Pa., 1968); Advisory Committee's Note, 39 F.R.D. 98, 104 (1966). Initially, we decide, however, that none of these prerequisites and provisions encumber the plaintiff with the burden of preliminarily demonstrating merit to his underlying cause of action. This accords with the pronouncement of Kahan v. Rosenstiel, 424 F.2d 161, 169 (C.A. 3, 1970), that,

> "[T]he determination whether there is a proper class does not depend on the existence of a cause of action."

Other Courts have similarly resolved this issue. In Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (D.C.S.D.N.Y., 1968), the Court decided that proof of the elements of the plaintiff's claim which was ultimate to the litigation was not properly a predeterminant, under F.R.C.P. 23, to the maintenance of a class action. And in Fogel v. Wolfgang, 47 F.R.D. 213 (D.C.S.D.N.Y., 1969), the Court held the defendant's argument that discovery had established his freedom from wrongdoing to be "substantially irrelevant" in determining the maintainability of a class action.

Dolgow v. Anderson, 43 F.R.D. 472 (D.C.E.D.N.Y., 1968), in which a hearing was ordered for the purpose of requiring the plaintiff to convince the Court that there was a substantial possibility of his prevailing on the merits prior to the Court's determination of whether or not a class action was maintainable, is to be distinguished. While that Court plainly held that unless so convinced, the action was not to be allowed to proceed as a class action, in reaching that holding, the Court confronted the questions of who was responsible for what notice to whom [3] and suggested that the defendant might properly bear the burden of effecting and financing notice. In that context, the Court was unprepared to assign such a burden without first examining the merits of the plaintiff's case. Since, however, the questions of who is responsible for what notice to whom need not be confronted in determining the bare maintainability of a class action,[4] we do not reach them in rendering this opinion.

Professor Moore suggests that the requisite preliminary showing be a minimal demonstration that the complaint is "sincere" or "more than frivolous". 3B Moore's Federal Practice ¶ 23.45[3]. We think this is a reasonable prerequisite and, on the basis of the instant complaint, conclude that the plain-

---

litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

3. F.R.C.P. 23(c) (2) provides as follows: "In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment,

whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel".

4. The maintainability of a class action, of course, is hollow if it is decided that legally the plaintiff is to bear the expense of notice if financially he is unable to do so. In Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (C.A. 2, 1968), the Court allowed that if,

"* * * financial considerations prevent the plaintiff from furnishing individual notice to [members of the class] there may prove to be no alternative other than the dismissal of the class suit".

tiff's allegations are sincere or more than frivolous.

## THE PREREQUISITES OF SUBSECTION (a)

■ The plaintiff represents that the instant class numbers approximately 600,000 members. A class of that size makes joinder of all members not only impracticable, but impossible. The prerequisite of impracticability of joinder is clearly satisfied.

■ It is equally clear that the instant suit presents questions of law and fact which are common to the class. The Act requires that certain disclosures of certain charges be made to persons extended credit. Aside from modifications with time, it is undeniable that the communications and statements issued to the respective members of the class concerning the respective charges were uniform, i.e., with respect to the annual charge, the same disclosures were made, properly or improperly, to each member of the class, and with respect to the late charge and the finance charge, the same disclosures were made, properly or improperly, respectively to each member of the class who suffered an overdue unpaid balance and to each member of the class who elected to make payments on the extended payment plan. The particular members to whom disclosures were made, properly or improperly, concerning the imposition of the late charge or the exaction of the finance charge, may possibly form subclasses as allowed by subsection (c) (4) (B) of F.R.C.P. 23.[5] The outlined standardized conduct of the defendant with respect to those respective members of the class, we think, presents at least "a common nucleus of operative facts". Siegel v. Chicken De-

light Inc., 271 F.Supp. 722, 726 (D.C.N. C.Cal., 1967).

■ The defendant suggests that since the Act does not cover the extension of credit for business or commercial purposes and since many of the members of the class use their credit cards solely or primarily for such purposes, neither the facts nor the claims of the plaintiff are common to all members of the class. The plaintiff concedes that those members of the class who use their credit cards solely for business or commercial purposes are without the coverage of the Act. Nothing in F.R.C.P. 23, however, mandates that the identity of the questions of fact or law be total. Siegel v. Chicken Delight Inc., *supra*, 726. 3B Moore's Federal Practice ¶ 23.45[2]. In Esplin v. Hirschi, 402 F.2d 94, 100 (C.A. 10, 1968), the Court quoted from Dolgow v. Anderson, *supra*, 490, as follows:

> "[T]he common issues need not be dispositive of the entire litigation. * * * [T]he fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible".

This observation is clearly consistent with F.R.C.P. 23 which itself requires that, in an action of this nature, the questions of law or fact common to the members of the class "predominate" over any questions affecting only individual members. The defendant's suggestion simply raises the sole individual question of fact applicable to the class and subclasses.

Moreover, the questions of law involved in this action attach coincidentally to the respective members of the

5. "[A] class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly". The formation of subclasses in class actions appears to be the rule rather than the

exception. See Green v. Wolf Corp., 406 F.2d 291, 299 (C.A. 2, 1968); City of Philadelphia v. Emhart Corporation, *supra*, 235; and Philadelphia Electric Company v. Anaconda American Brass Co., *supra*, 457.

class, i.e., the statutory provisions upon which the determination of the lawfulness or unlawfulness of the disclosures which were made, mismade, or not made by the defendant will turn, are correlevant and coincident thereto. We conclude, therefore, that common questions of law and fact are presented by this action.

■■ That the plaintiff's claims are typical of the claims of the class, too, is equally clear. The plaintiff represents that he held one of the defendant's credit cards on July 1, 1969, and has held one continuously since, that disclosures with respect to each of the three alleged "finance charges" have been made, mismade or not made to him, that he has had each of the charges imposed upon or exacted from him, and that he has paid each of them. The defendant contends that since the plaintiff uses his credit card primarily for business purposes, he is not typical of the class which he seeks to represent. The requirement of typicality contemplates that the claims of the nominal plaintiff be representative of those of the members of the class whom he purports to represent and that he not have interests which are in conflict with or inimical to those of the other members. Mersay v. First Republic Corporation of America, *supra*. In this case, the plaintiff's claims appear to be representative of the respective members of the class. If he successfully establishes the facts regarding the defendant's disclosures as he has alleged and the law is as he interprets it, then he will have advanced those claims which are typical of each of the respective members of the class which he represents. Further, we detect no interests of the plaintiff in the maintenance of this action which are in conflict with or inimical to those of the other members. The fact that he may have used his credit card on most occasions for business purposes does not negate his representation that he used the card on some occasions for consumer purposes. Since

the Act does not discriminate between or among consumer uses, we conclude that the coincidence of the nominal plaintiff's claims with those of the respective members of the class, and the absence of conflict therewith, satisfies the requirement that his claims be typical of the claims of the class.

■ The final prerequisite mandates that the representative parties will fairly and adequately protect the interests of the class. The fact that the plaintiff is only one of a class of approximately 600,000 is irrelevant. As stated in Epstein v. Weiss, 50 F.R.D. 387, 391 (D.C. E.D.La., 1970), citing Green v. Wolf, *supra*, and Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (C.A. 2, 1968),

"[I]t is now well settled that neither the number of representative parties nor their financial interests is controlling in determining whether the plaintiffs will fairly and adequately protect the interests of their class. Thus a single plaintiff may represent the entire class, no matter how small his claim may be, if other factors indicate that he will fairly and adequately protect the interests of his class."

The Courts have held that this prerequisite is satisfied if (1) the representatives share, without conflict, the interests of the unnamed members of the class and (2) the Court is assured that the representatives will vigorously prosecute the rights of the class through qualified counsel. Epstein v. Weiss, *supra*, 392; Cannon v. Texas Gulf Sulphur Company, 47 F.R.D. 60 (D.C.S.D.N.Y., 1969); and Shulman v. Ritzenberg, 47 F.R.D. 202 (D.C.D.C., 1969). Quantitative analyses are not relevant to this determination. Shulman v. Ritzenberg, *supra*. The first consideration overlaps with the question of typicality which we have concluded to be satisfied. The second, and primary, consideration is the "forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class, so as to insure

them due process". Mersay v. First Republic Corporation of America, *supra*, 470. That the plaintiff's attorney be "qualified, experienced, and generally able to conduct the proposed litigation" is indispensable. Eisen v. Carlisle & Jacquelin, *supra*, 562. These judgments must obviously be made on an *ad hoc* basis. In this case we conclude, from the demonstrations of counsel to date, that this prerequisite is satisifed.

THE PROVISIONS OF SUBSECTION (b) (3)

■ Under Subsection (b) (3), we proceed to inquire whether those questions which are common to the class predominate over any questions affecting only individual members thereof and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The common questions will predominate if, "the complaint alleges a common course of conduct over a period of time, directed against the members of the class * * * and violating common statutory provisions". Epstein v. Weiss, *supra*, 393, citing Esplin v. Hirschi, *supra*, 100. In this case, the course of the defendant's relevant conduct and the law applicable thereto, is common to all members of the class and subclasses, respectively. The only individual questions which we perceive in this instance are of what use the member of the class made of his credit card and, if the defendant is found to have violated the Act and Regulation, what damages has the member sustained.[6]

Most of the suits brought as class actions pursuant to F.R.C.P. 23 to date have alleged securities frauds which often involved individual elements of misrepresentation and reliance, as well as damages. If a common course of conduct is found, however, these individual elements have been uniformly held not to preclude the maintenance of a class action. Esplin v. Hirschi, *supra*; Green v. Wolf, *supra*; Epstein v. Weiss, *supra*; Mersay v. First Republic Corporation of America, *supra*; and Dolgow v. Anderson, *supra*. As noted in Epstein v. Weiss, *supra*, 394, citing Green v. Wolf, *supra*, 301 and Esplin v. Hirschi, *supra*, 100,

"[T]he Courts have consistently recognized that the possible necessity for separate trials on specific individual issues does not bar a class action."

Similarly, suits brought as class actions alleging antitrust violations have been allowed despite the individual issues of damages. Eisen v. Carlisle & Jacquelin, *supra*; City of Philadelphia v. Emhart Corporation, *supra*; State of Illinois v. Harper Row Publishers, Inc., 301 F. Supp. 484 (D.C.N.D.Ill., 1969); and Philadelphia Electric Company v. Anaconda American Brass Co., *supra*.

Notwithstanding this line of decisions, we find problematical the highly personalized nature of the individual question regarding the use to which the defendant's credit card is put. We are undecided as to whether or not that question makes the class unmanageable, with the result that the common questions do not predominate.[7] For that reason, we reserve judgment on the issue of predominance.

6. The Act provides for liability to an aggrieved person "in an amount equal to the sum of (1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court".

7. F.R.C.P. 23(b) (3) enumerates four factors which are to be considered in making findings under (b) (3), including (D) the difficulties likely to be encountered in the management of a class action. We think that the manageability factor is pertinent not only to the findings with respect to superiority but also to those with respect to predominance.

We now turn to a consideration of the superiority of the class action in this instance. The other available methods to be considered in determining the superiority of the class action for the fair and efficient adjudication of the controversy, were enumerated in Dolgow v. Anderson, *supra*, 487, 488 as joinder, intervention, consolidation, the test case and the administrative agency. While joinder, intervention, consolidation and the administrative agency do not offer preferable alternative methods, we are intrigued by the possibility of a test case. Ordinarily a test case is inappropriate when any given member of a group which has been wronged has not been sufficiently damaged to justify the institution of suit solely on his own behalf. As stated in Dolgow v. Anderson, *supra*, 485, citing Kalven and Rosenfield, The Contemporary Function of the Class Suit, 8 U.Chi.L.Rev. 684, 686 (1941),

"[T]he class action is particularly appropriate where those who have allegedly been injured are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive."

The Truth in Lending Act, however, provides for recovery, by a successful plaintiff, of costs and reasonable attorney's fees. This provision, it seems to us, raises the question of whether or not a test case may be superior to a class action in this case, notwithstanding that the possibility of failure may deter poorer plaintiffs.

We conclude that the prerequisites of Subsection (a) are satisfied but that the provisions of Subsection (b) dictating the predominance of the common questions of law or fact and the superiority of the class action are in need of further exploration and development.

To that end, we find it necessary to solicit memoranda on the questions of the manageability and superiority of this proposed class action. Additionally, we will consider the question of notice at this time.

### ORDER

And now, this 28th day of May, 1971, it is ordered that counsel for the plaintiff file a memorandum of law and fact on or before June 11, 1971, and that counsel for the defendant file a reply memorandum on or before June 21, 1971. The memoranda will be confined to a consideration of the following questions:

(1) Is the spectre of parading, potentially, 600,000 members of the class before the Court to resolve the individual issues involved such as to make this suit unmanageable as a class action?

(2) Is a test case a superior available alternative method to a class action of fairly and efficiently adjudicating this case?

(3) How, in detail, shall the unnamed members of the class be notified of the action and who shall bear the burden, mechanically and financially, of such notification? (The consideration of this question shall include estimates of costs of notice.)

Pending resolution of these questions and the determination of the class action issue, neither plaintiffs or their counsel, nor defendants or their counsel shall solicit or contact the proposed class independently in connection with this suit without prior court approval.

It is further ordered that Argument on these matters will be held on July 6, 1971, at 10:00 A.M., in Court Room #10, Fifth Floor, United States Post Office and Courthouse.