Raymond **CHANDLER**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**SOUTHWEST JEEP–EAGLE, INC.,** and Calumet National Bank, Defendants.

No. 94 C 6171.

United States District Court, N.D. Illinois, Eastern Division.

June 8, 1995.

**304**

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, for Raymond Chandler.

Robert L. Kiesler, Dale Lehman Schlafer, Bryan W. Luce, Peter Raphael Mennella, Kiesler & Berman, Chicago, IL, Richard M. Karr [Lead], Jonathan Paul Geen, Hardt & Stern, P.C., Chicago, IL, for Southwest Jeep–Eagle, Inc.

Robert D. Nachman, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, Todd L. Padnos, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Calumet Nat. Bank.

Robert D. Nachman, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, Todd L. Padnos, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, Dale Lehman Schlafer, Bryan W. Luce, Peter Raphael Mennella, Kiesler & Berman, Chicago, IL, Richard M. Karr, Jonathan Paul Geen, Hardt & Stern, P.C., Chicago, IL, for Calumet Nat. Bank.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Raymond Chandler ("Chandler") sues defendants Southwest Jeep–Eagle, Inc. ("Southwest") and Calumet National Bank ("Calumet") seeking redress for alleged misrepresentations and unfair and deceptive practices in connection with Southwest's standard retail installment contract. Counts I and II of the complaint, the class claims, are alleged only against Southwest. Count I alleges that Southwest made certain misrepresentations in its retail installment contracts in violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). Count II alleges that the misrepresentations amounted to deceptive practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("Consumer Fraud Act"). Counts III through VI are all claims brought by Chandler alone against Southwest and Calumet, the financial institution that financed the purchase. Counts III and IV, which this opinion does not address, allege that Southwest sold Chandler an unmerchantable motor vehicle, in violation of the Illinois Uniform Commercial Code [count III] and the Magnuson–Moss Consumer Act, 15 U.S.C. § 2310(d) [count IV]. Count V alleges that Southwest breached an express warranty or service contract by failing to make necessary repairs to Chandler's vehicle. Count VI alleges that Southwest engaged in unfair and deceptive practices, in violation of the Consumer Fraud Act, by selling Chandler a defective car and then attempting to evade responsibility for the vehicle's condition through fraudulent means.

Pursuant to Federal Rule of Civil Procedure 23, Chandler moves for class certification with respect to counts I and II. Specifically, Chandler proposes that the class be defined as all persons who satisfy each of the following four criteria:

(i) they purchased a service contract or extended warranty from Southwest;

(ii) their transaction was financed by a retail installment contract;

(iii) their transaction was documented as a consumer transaction (i.e., TILA disclosures were made); and

(iv) the retail installment contract states that an amount was paid to a third party on account of an extended warranty or service contract that is other than the amount actually collected by the third party.

Plaintiff's Motion for Class Certification at 4.

With respect to count I, the TILA claim, the proposed class includes anyone whose retail installment contract is dated on or after October 12, 1993, one year prior to the date Chandler filed his original complaint. With respect to count II, the Consumer Fraud Act claim, the proposed class includes anyone whose retail installment contract was outstanding on or after October 12, 1991, three years prior to the date Chandler filed his original complaint. The different temporal parameters of the two classes is a product of the different statutes of limitation for TILA and the Consumer Fraud Act. A TILA action must be filed within one year of the contract date, 15 U.S.C. § 1640(e), while the Consumer Fraud Act has a three-year statute of limitations, 815 ILCS 505/10a(e).[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Southwest[2] moves to dismiss count V for failure to state a claim upon which relief can be granted. Additionally, pursuant to Federal Rule of Civil Procedure 9(b), Southwest moves to dismiss count VI for failure to plead the circumstances constituting fraud with particularity.

## BACKGROUND [3]

Southwest operates an automobile dealership. Calumet is a nationally chartered bank. On May 23, 1994, Chandler purchased from Southwest a used Chrysler automobile to be used for personal, family and household purposes. At the time he purchased the car, Chandler signed Southwest's standard motor vehicle retail installment sales contract, which was subsequently assigned to Calumet.[4] Chandler also informed Southwest that he wished to purchase a full warranty from Chrysler that would be transferrable to another authorized Chrysler dealership for the purpose of repairs.[5] Southwest informed Chandler that the price for a full warranty was $1,780.40 and provided Chandler with its standard service contract,[6] on which the fee amount was listed under the subheading

1. Although separate classes are at issue for each count because of these timing issues, the members' characteristics are materially identical. The difference in class size is solely the result of the different statutes of limitations for TILA and the Consumer Fraud Act. Because the operative facts and legal theory on which both claims are based are identical, for ease of exposition this opinion generally refers to both classes as a single unit.

2. Calumet, who is separately represented, has not joined in Southwest's motion to dismiss counts V and VI.

3. When evaluating a motion for class certification or a motion to dismiss, the Court accepts all well-pleaded facts as true. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992) (stating that *all well-pleaded factual allegations* are accepted as true on a motion to dismiss); *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993) ("the allegations made in support of certification are taken as true"); *Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill.1993) (same). Accordingly, the following recitation of background facts is derived from the allegations of the complaint and, where appropriate, facts alleged in plaintiff's memorandum in support of class certification.

4. This retail sales contract includes a provision that subjects the holder of the contract (Calumet) to all claims and defenses that could be asserted against the seller (Southwest), thereby explaining Calumet's presence in this lawsuit.

5. The amended complaint alleges that Chandler informed Southwest that he would not purchase a vehicle from Southwest without a full warranty from Chrysler that would be transferrable to another authorized Chrysler dealership for the purpose of repairs (¶ 14). Southwest subsequently sold him the service contract that is the subject of this dispute (¶ 15). Although the amended complaint is less than clear, this Court's reading of the complaint is that Southwest represented to Chandler that the service contract was transferrable to another Chrysler dealer for the purpose of repairs.

6. Throughout the amended complaint, Chandler refers to the service contract as the "Extended Warranty or Service Contract;" however, the contract attached as Exhibit A to Chandler's response to Southwest's motion to dismiss counts V and VI is simply entitled "Service Contract." Therefore, this opinion shall also refer to the document as the "service contract."

"Amounts Paid to Others for You," along with taxes, insurance premiums, and license, title, registration and filing fees, none of which were negotiable. Chandler signed the contract and paid the $1,780.40 fee to Southwest.

Chandler alleges, however, that Southwest only transferred a small portion of the $1,780.40 to Chrysler, retaining the balance, and that the fee amount was actually unilaterally determined by Southwest and therefore negotiable. Chandler charges that the method by which the cost was listed on the contract is misleading, unfair and deceptive. He alleges that Southwest intended him and other purchasers to rely on the misleading, unfair and deceptive representation and thus not attempt to negotiate the price of the service contract, allowing Southwest routinely to overcharge customers. He further alleges that had he known that the cost of the service contract was negotiable, neither he nor the average consumer would have paid as much.

Shortly after Chandler purchased his vehicle, it developed substantial mechanical problems. Chandler brought the car back to Southwest numerous times for engine work and repairs to the radiator, tachometer, oil pressure and temperature gauges, air condenser, power steering, transmission, front wheel drive, alignment, internal computers and radio. Southwest, which kept the vehicle for lengthy periods of time, allegedly in order to complete the repairs, purportedly performed some repairs, but most of the problems remained uncorrected. Southwest refused Chandler's request to view the defective auto parts that Southwest allegedly had replaced.

After becoming frustrated with Southwest's inability to make the necessary repairs, Chandler took the vehicle to another authorized Chrysler dealer and requested service under the Chrysler service contract that he had purchased through Southwest. The dealer informed Chandler that the Chrysler warranty computer showed no record of Chandler's service contract, and refused to perform the necessary repairs. The dealer also informed Chandler that the vehicle model that Chandler had purchased from Southwest was the subject of several outstanding manufacturer's recalls with respect to which Southwest had not made repairs prior to selling the vehicle to Chandler. Chandler returned to Southwest for several more unsuccessful attempts to have the vehicle repaired. On September 13, 1994, Chandler revoked his acceptance of the vehicle on the basis of unmerchantability. Chandler claims that Southwest failed to make the necessary repairs to the defective vehicle as promised under the service contract and then fraudulently evaded responsibility for the car's condition.

## ANALYSIS

### Class Certification for Counts I and II

The party seeking class certification bears the burden of establishing that certification is proper. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993).

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993) (internal quotation marks omitted). "All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class." *Retired Chicago Police,* 7 F.3d at 596; *Harriston,* 992 F.2d at 703. Second, the action must satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Chandler seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.[7]

---

**7.** Rule 23(b)(3) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

Chandler maintains that all of the requirements of Rule 23(a) and (b)(3) are met. Southwest contends that Chandler fails to meet any of Rule 23's requirements. Accordingly, we address each of the requirements for Rule 23(b)(3) certification in turn below.

### A. Numerosity

■ Rule 23's first express requirement is that the class be "so numerous that joinder of all members is impracticable." FED. R.CIV.P. 23(a)(1). The issue of whether the numerosity requirement is satisfied is extremely fact-specific. Courts have granted class certification to groups smaller than 30, *see Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D.Ill.1986) (finding 29 class members sufficient in securities fraud case where the class members were geographically diverse), and denied class certification in cases where the proposed class exceeded 100 members. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir.1989) (denying certification to proposed class of 400–600 members where class membership could only be determined by an inquiry into the individual circumstances of each member); *In re Cardinal Indus.*, 139 B.R. 703 (Bankr.S.D.Ohio 1991) (holding that 205 class members was not sufficient where joinder is practicable because the majority of class members were controlled by the same corporation); *Liberty Lincoln–Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65 (D.N.J.1993) (finding that 123 class members was not sufficient where the class members were large businesses capable of litigating their claims individually). As a general proposition, although the numerosity analysis does not rest on any magic number, *see Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill.1993), permissive joinder is usually deemed impracticable where the class members number 40 or more. *See* H. NEWBERG, CLASS ACTIONS § 305 (1992); *Ikonen v. Hartz*

*Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.Cal.1988). That standard is met in this case.

Southwest concedes that the proposed class would consist of approximately 50 members for purposes of the TILA claim [count I] and approximately 150 members for purposes of the Consumer Fraud Act claim [count II], but argues that these classes are insufficiently numerous to warrant certification. Southwest cites *Marcial, In re Cardinal Indus.*, and *Liberty Lincoln–Mercury* as support for its argument. *See* Defendant's Response in Opposition to Plaintiff's Motion for Class Certification at 4. However, in each of these cases, class certification was denied for reasons unrelated to numerosity. Moreover, the facts of this case are significantly different than those presented in the cases cited by Southwest. In the instant case, the dispute concerns a standard form document signed by all proposed class members, who are otherwise unrelated and would unlikely be motivated to bring individual actions given the relatively small size of the claim. These factors militate in favor of class certification even where the number of class members is relatively small. *See, e.g., Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 n. 9 (7th Cir.1969) (finding 40 class members sufficient for certification where individual class members are widely scattered and the amount at issue too small to warrant undertaking individual actions). In the instant case, the Court finds that the proposed classes are sufficiently numerous to make joinder impracticable. Accordingly, we find the numerosity requirement to be satisfied.

### B. Commonality

■ Rule 23(a)(2) requires the presence of questions of law or fact common to the class. A "common nucleus of operative fact" is gen-

---

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or de-

fense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. FED.R.CIV.P. 23(b)(3).

erally enough to satisfy the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949–50 (N.D.Ill.1984)). A common nucleus of operative fact is typically found where, as in the instant case, the defendants have engaged in standardized conduct toward members of the proposed class. *Franklin*, 102 F.R.D. 944, 949 (N.D.Ill.1984) (citing *Katz v. Carte Blanche Corp.*, 52 F.R.D. 510, 514 (W.D.Pa. 1971)) (finding class certification appropriate where plaintiff challenged city police department's standard method of transporting all arrestees); *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D.Kan.1995) (granting class certification where the contracts signed by all proposed class members, while not identical, contained virtually the same provision as that challenged by the named class representative); *In re United Energy Corp. Solar Power Modules Tax Shelter Invs.*, 122 F.R.D. 251 (D.Cal.1988) (finding class certification appropriate where the class claims were primarily grounded on misrepresentations and omissions contained in a common core of documents); *Lessard v. Metropolitan Life Insur. Co.*, 103 F.R.D. 608 (D.Maine 1984) (granting class certification where all proposed class members were parties to the same contract and subject to the same standardized conduct by the defendant).

In the instant case, all proposed class members purchased a standard service contract from Southwest. Thus, their claims all involve the common question of whether the disclosure provisions of Southwest's standard retail installment contract violated TILA and/or the Consumer Fraud Act. Southwest contends that the commonality requirement is not met because each class member must prove reliance and actual damages. It is well-established, however, that the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant has engaged in standardized conduct toward the class. *See De La Fuente v. Stokely–Van Camp,*

*Inc.*, 713 F.2d 225, 233 (7th Cir.1983) (quoting C. WRIGHT, A. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1784 (1972); J. MOORE & J. KENNEDY, MOORE'S FEDERAL PRACTICE ¶ 23.45 (1982)) (noting generally that the presence of individualized damages does not render a case unsuitable for class certification); *Heartland Communications*, 161 F.R.D. 111, 114–115 (finding that minor differences in the contracts signed by class members did not suffice to preclude a finding of commonality); *In re United Energy Corp.*, 122 F.R.D. 251, 254 (finding that, where the allegations concern issues of common conduct, standardized documents and common misrepresentations, individualized issues of reliance, causation and damages do not render the case unsuitable for class certification). Accordingly, we find that the commonality requirement is satisfied.

C. Typicality

■ Rule 23(a)(3) requires that the representative plaintiff's claims be typical of those of the class. This requirement focuses on whether the named representative's claim has the same essential characteristics of the claims of the class at large. A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente*, 713 F.2d 225, 232 (7th Cir.1983) (quoting H. NEWBERG, CLASS ACTIONS § 115(b) at 185 (1977)). In this case, the legal theory underlying Chandler's class claims is that the standard retail installment contract provided to him and all other proposed class members violated TILA and/or the Consumer Fraud Act. Plainly, Chandler's TILA and Consumer Fraud Act claims arise out of the same course of conduct giving rise to the claims of the other class members. Southwest maintains, however, that Chandler is an atypical class representative because his own deposition testimony suggests that he did not rely on (or was not misled by) any alleged misrepresentation.[8]

---

**8.** Southwest characterizes Chandler's deposition testimony as indicating that at the time of the transaction, he had no expectation one way or

the other as to whether Southwest would be making a profit on the sale of the service contract. Defendant's Response in Opposition to

It is clear that Chandler has fairly alleged that he relied upon and was deceived by Southwest's misrepresentation. Amended Complaint at ¶¶ 24, 28. Furthermore, Southwest reads Chandler's testimony selectively. In his deposition, Chandler clearly states that he believed that the amount charged would be transferred to the service contract provider. Plaintiff's Reply in Support of Motion for Class Certification at 9. Although Southwest may ultimately prove that Chandler did not rely on the alleged misrepresentation, the determination of whether Chandler is a typical class member for purposes of class certification does not depend on the resolution of the merits of the case. The typicality requirement is satisfied.

### D. Adequacy of Representation

■ Rule 23(a)(4)'s adequacy requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, *Rosario*, 963 F.2d 1013 (7th Cir. 1992); (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy," *Riordan*, 113 F.R.D. 60, 64 (N.D.Ill.1986); and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Id.* Southwest challenges Chandler's ability to satisfy the last of these three requirements.[9] Southwest notes that at least one judge has expressed doubt regarding Chandler's counsel's ability to represent a class. *See Dartmouth Plan, Inc. v. Delgado*, 87 CH 6676 (Cook Co. Cir. Court 1993). Notwithstanding the foregoing, this Court is satisfied that Chandler's attorneys have demonstrated that they possess the necessary qualifications to represent adequately a class of consumers under TILA and the Consumer Fraud Act.

Plaintiff's Motion for Class Certification at 6. Southwest argues that Chandler's statements indicate that because he did not consider at the time of the transaction whether Southwest was making a profit, he could not have been deceived by the contract terms. Accordingly, Southwest asserts that Chandler's claims could not be considered typical of class members who were allegedly misled by the contract. *See id.* at 7. It should be noted that Southwest's arguments really go to the merits of Chandler's claims rather than their typicality.

Chandler's attorneys have successfully prosecuted numerous consumer class actions—including actions before this Court. *See* Plaintiff's Memorandum in Support of Motion for Class Certification, App. G. In addition, a number of courts have commented favorably on their performance in class actions. See e.g., *Bermudez v. First of Am. Bank*, 886 F.Supp. 643 (N.D.Ill.1995); *Brown v. LaSalle N.W. Nat'l Bank*, No. 92 C 8392, 1993 WL 313563 at *5 (N.D.Ill. Aug. 17, 1993); *Johnson v. Steven Sims Subaru Leasing*, No. 92 C 6355, 1993 WL 761231 at *5 (N.D.Ill. June 9, 1993). Accordingly, we find that Chandler has met his burden of satisfying Rule 23(a)(4)'s adequacy of representation requirement.

### E. Predominance of Common Questions of Law or Fact

Class certification pursuant to Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3).

### 1. Common Questions of Law and Fact Predominate

Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3). Rule 23(a)(2) requires that common questions exist; Rule 23(b)(3) requires that they predominate. Many of the issues raised by Southwest relating to the relative importance of common issues have been addressed and disposed of above in the Court's discussion of Rule (a)(2)'s commonality requirement.

**9.** Southwest somewhat half-heartedly asserts that Chandler is not personally motivated to pursue the claims on behalf of the class and that this action is driven by Chandler's counsel. However, Southwest has made no showing that Chandler is not an adequate representative of the class; and, the fact that Chandler's counsel has prosecuted numerous other class actions, standing alone, does not vitiate Chandler's role as a class representative.

■ In considering whether common questions of law or fact predominate, the common issues need not be dispositive of the entire litigation. *Riordan*, 113 F.R.D. 60, 65 (N.D.Ill.1986). "Instead, resolution of the predominance question tends to focus on the form trial on the issues would take, with consideration of whether the action would be manageable." *Elliott v. ITT Corp.*, 150 F.R.D. 569, 577 (N.D.Ill.1992) (citing *Simer v. Rios*, 661 F.2d 655, 672–73 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982)).

■ The predominance requirement is generally satisfied where a "common nucleus of operative fact" exists among all class members for which the law provides a remedy. *Halverson v. Convenient Food Mart*, 69 F.R.D. 331, 335 (N.D.Ill.1974). Both TILA and the Consumer Fraud Act claims lend themselves readily to the finding that a common issue predominates over individual issues, as the principal question presented is whether the disclosure provisions of Southwest's standard retail installment contract provided to Chandler and all the proposed class members violated TILA and/or the Consumer Fraud ·Act.

Southwest suggests that the damages claimed by each class member can only be calculated by determining the extent of each individual's actual reliance on the alleged misrepresentation, and thus that common questions do not predominate. The Illinois Supreme Court has held, however, that reliance is not an element of a Consumer Fraud Act claim. *Martin v. Heinold Commodities*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 754 (1994). The question of reliance and individualized damages therefore does not arise at all in relation to the Consumer Fraud Act claim. With respect to the TILA claim, we note that predominance is not precluded even if individualized proof of damages is required. *See, e.g.*, Rules Advisory Comm. Notes to 1966 Amends. to Rule 23, 39 F.R.D. 69, 103 (1966); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976) (noting that the amount of damages is invariably an individual question and does not defeat class action treatment); *Heartland Communications*, 161

F.R.D. 111, 116 (holding that the predominance requirement is satisfied even in the presence of individual questions where the critical issues are the defendant's standardized conduct towards class members and interpretation of the defendant's standard contract language). As long as the allocation of individualized damages does not create problems of unmanageability, which it does not in this case, a court may grant class certification. *De La Fuente*, 713 F.2d 225, 233 (holding that the administrative complications that may arise in calculating individual damages do not suffice to render district court's grant of class certification an abuse of discretion). For the foregoing reasons, this Court finds the predominance requirement to be satisfied.

### 2. Class Action is Superior to Other Methods of Litigating This Matter

■ Rule 23(b)(3) provides a non-exhaustive list of factors for courts to consider in determining the superiority of class actions to individual litigation. These factors include the interest of individual members in individually controlling the litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. Fed.R.Civ.P. 23(b)(3).

The Court finds that a class action is superior to other methods of litigating this matter for several reasons. First, as should be clear from the foregoing discussion, this case poses no unusual manageability concerns arising from either the size of the class or the adjudication of damages. Second, most of the proposed class members are individual consumers who are probably unaware of their rights under TILA and the Consumer Fraud Act. A class action would help to ensure that their rights are protected. Third, the size of each individual claim is relatively small. Class members, even if aware of their rights, likely would lack the initiative to bring suit individually. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164–65 (7th Cir.1974) (finding "the improbability that large numbers of class members would possess the initiative to litigate individually" pertinent to superiority finding). Fourth, efficiency and consistency concerns favor try-

ing the legality of a document challenged by all class members in one litigation, rather than forcing each proposed class member to litigate his or her claim individually. *Scholes v. Stone,* 143 F.R.D. 181 (N.D.Ill.1992). In view of these considerations, the Court finds Rule 23(b)(3)'s superiority element to be satisfied.

Having determined that all of the prerequisites of Rule 23(a) are satisfied and that the action also meets the conditions of Rule 23(b)(3), the Court grants plaintiff's motion for class certification for counts I and II. This action may be maintained as a class action with the class defined, as in plaintiff's motion and memorandum in support of class certification, as follows:

(1) Count I: All individuals who purchased a service contract from the defendant by means of a standard retail installment contract, dated on or after October 12, 1993, in which the TILA disclosures represented that the defendant paid an amount to a third party in exchange for a service contract that was different from the amount actually paid.

(2) Count II: All individuals who purchased a service contract from the defendant by means of a standard retail installment contract, outstanding on or after October 12, 1991, in which the TILA disclosures represented that the defendant paid an amount to a third party in exchange for a service contract that was different from the amount actually paid.

*Southwest's Motion to Dismiss Count V under Rule 12(b)(6)*

 A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Ass'n, Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). All well-pleaded facts are taken as true, all inferences are drawn in favor of the plaintiff and all ambiguities are resolved in favor of the plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). The federal system of notice pleading does not favor dismissal for failure

to state a claim. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). In short, the only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Southwest moves to dismiss count V, contending that Chandler's breach of warranty claim must fail because the service contract contains no warranties. However, Southwest ignores the fact that count V of Chandler's amended complaint is captioned "Breach of Express Warranty *or* Service Contract" (emphasis added). Plaintiff's Amended Complaint at 18. Thus, the fact that the service contract does not purport to contain any warranty is not dispositive. Apparently recognizing this fact, Southwest asserts without any explanation whatsoever that Chandler has not pleaded facts stating a claim for breach of contract.[10]

 Under Illinois law, a plaintiff must establish the following elements in order to prevail on a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff resulting from the breach. *See Berry v. Oak Park Hosp.,* 256 Ill.App.3d 11, 195 Ill.Dec. 695, 700, 628 N.E.2d 1159, 1164 (Ct.1993); *Nielsen v. United Servs. Auto. Ass'n,* 244 Ill.App.3d 658, 183 Ill.Dec. 874, 877, 612 N.E.2d 526, 529 (Ct.1993). Reading the complaint in the light most favorable to Chandler, the Court is satisfied that he has adequately pleaded a breach of contract claim. Chandler alleged the existence of a valid and enforceable service contract and his performance thereunder. Amended Complaint ¶¶ 16, 39. He further alleged that he returned the vehicle to Southwest numerous times for service of covered components and that Southwest repeatedly failed to perform repairs covered by the con-

---

10. Such conclusory arguments ought not consume this Court's scarce time. Although the Court is inclined to simply disregard such a conclusory and unsupported argument, we shall

nevertheless address Southwest's challenge to Chandler's breach of contract claim for the sake of thoroughness.

tract. Amended Complaint ¶¶ 39, 44. Finally, he alleged that he was damaged as a result of the breach in an amount equal to the purchase price of the vehicle and service contract, finance charges, and amount paid for unsuccessful repairs. Amended Complaint ¶ 76. Thus, Chandler has sufficiently pleaded a claim for breach of contract under Illinois law. Accordingly, the Court denies the motion to dismiss count V.

*Southwest's Motion to Dismiss Count VI under Rule 9(b)*

Southwest moves to dismiss Chandler's Consumer Fraud Act claim because it is not pleaded with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity. Rule 9(b) was enacted (1) to inform a defendant of the claims against it so that it may form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect a defendant from unfounded charges of fraud that may injure its reputation. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 144 (N.D.Ill.1993). A party asserting a fraud claim must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Servs.*, 978 F.2d 344, 352 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). In other words, the complaint must include "the who, what, when, where, and how" of the fraud. *DiLeo*, 901 F.2d at 627; *United States ex rel. Robinson v. Northrop Corp.*, 824 F.Supp. 830, 832 (N.D.Ill.1993).

▮ Having carefully reviewed the complaint, the Court agrees with Southwest that Chandler's allegations are not sufficiently specific to satisfy the requirements of Rule 9(b). The amended complaint alleges that Chandler returned his vehicle to Southwest on numerous occasions for repairs to various parts of the car (¶¶ 39, 44) and that Southwest purported to have made such repairs without actually having done so (¶ 79). However, Chandler fails to allege the "who, what, when, where and how" of the alleged fraud. That is, Chandler does not explain when he took his car in for service, who said what to him regarding the servicing of his vehicle, and what repairs Southwest failed to make to his vehicle. Additionally, while the complaint alleges that Southwest fraudulently informed Chandler that he could seek service from other authorized Chrysler dealers (¶¶ 14–15), once again, the complaint fails to allege the specifics—that is, who said what. Finally, Chandler alleges that outstanding manufacturer's recalls for his vehicle had been issued and that Southwest failed to make the repairs required by these recalls before selling the vehicle to him. In support of this allegation, Chandler has attached to his complaint a computer printout that purports to list the outstanding recalls that had been issued affecting his vehicle. Chandler makes no attempt, however, to identify which of the repairs related to these recalls Southwest failed to perform. The allegations set forth above do not provide sufficient "who, what, when, where and how" to meet the requirements of Rule 9(b).

Accordingly, the motion to dismiss count VI under Rule 9(b) is granted. However, because the Court cannot conclude from the present record that Chandler would be unable to prove any set of facts entitling him to relief under the Consumer Fraud Act, the Court is unable to dismiss count VI with prejudice. Instead, count VI is dismissed without prejudice and Chandler is granted until June 23, 1995 to file an amended complaint alleging count VI with the particularity required by Rule 9(b).

*CONCLUSION*

Chandler's motion for class certification is granted. Southwest's motion to dismiss counts V and VI is granted in part and denied in part. Count VI is dismissed without prejudice and Chandler is granted until June 23, 1995 to file a second amended com-

plaint realleging count VI with particularity. The motion is denied in all other respects.